UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON V. KINSELLA,<br><br>      Plaintiff,<br> v.<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT, *et al.*,<br><br>      Defendants,<br> and<br><br>SOUTH FORK WIND, LLC,<br><br>      Defendant-Intervenor. | Civil Action No. 22-2147 (JMC) |

**MEMORANDUM OPINION**

  Plaintiff Simon Kinsella brought this action under the Administrative Procedure Act (APA), challenging the Bureau of Ocean Energy Management's approval of a wind farm off the coast of Long Island, New York.[1] Defendants moved to transfer the case to the District Court for the Eastern District of New York. ECF 11. The Court GRANTS that motion and transfers the case.

**I. BACKGROUND**

  Plaintiff Simon Kinsella is a resident of Wainscott, in the Town of East Hampton, Suffolk County, New York. ECF 34-2 ¶ 5.[2] He challenges the Bureau of Ocean Energy Management's

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] All citations to the Complaint are to the First Amended Complaint, ECF 34-2, which was submitted to the Court on November 2, 2022. The Court granted Kinsella's Motion to Amend as a matter of course on November 9, 2022.

(BOEM) approval of the South Fork offshore wind energy project, which is to be constructed thirty-five miles east of Montauk Point, Long Island. *Id.* ¶¶ 11–12; ECF 11-3 at 7. The Project has two components: the South Fork Wind Farm and the South Fork Export Cable project. ECF 11-3 at 10. BOEM, a component of the Department of the Interior, held a competitive sale and awarded the lease to a company that is now called South Fork Wind, LLC. *Id.* at 6. On November 24, 2021, BOEM, together with the National Marine Fisheries Service (NMFS), issued a Record of Decision (ROD) approving the project with modifications. *Id.* at 4, 18.

The approval process included myriad opportunities for input from other agencies and stakeholders. The ROD itself was prepared with the cooperation of more than a half-dozen federal, state, and local agencies, including: the U.S. Army Corps of Engineers, the Bureau of Safety and Environmental Enforcement, the U.S. Coast Guard, the U.S. Environmental Protection Agency, the Massachusetts Office of Coastal Zone Management, the Rhode Island Coastal Resource Management Council, the Rhode Island Department of Environmental Management, the Town of East Hampton, and the Trustees of the Freeholders and Commonality of the Town of East Hampton. *Id.* at 4. Also, during the public comment period for the project's Environmental Impact Statement (EIS), BOEM held three virtual public hearings and received nearly 400 unique submittals from the public, agencies, and other interested groups. *Id.* at 6. In addition to BOEM's review, permits were issued for the onshore component of the project by the New York Public Service Commission (NYPSC)—which conducted its own, lengthy approval process. ECF 11-5 at 7–12. Kinsella was a formal party to that proceeding. *Id.* at 4; ECF 34-2 ¶ 111.

The South Fork project has been challenged in other courts. The NYPSC's approval was appealed and upheld in New York state court. *See Mahoney v. U.S. Dep't of the Interior*, No. 22-cv-01305, 2022 WL 1093199, at *2 (E.D.N.Y. 2022). In another action, residents of the town of

Wainscott petitioned a state court to invalidate an easement granted for the project—a petition that was denied. *Id*. In another action, Wainscott residents moved the District Court for the Eastern District of New York for a preliminary injunction to halt construction of the onshore export cable. *Id*. That motion for an injunction was denied in April 2022. *Id.* at *3. Kinsella himself has sued (in state-court actions separate from this case) the NYPSC, the New York State Department of Public Service, and the Long Island Power Authority. ECF 34-2 ¶¶ 411, 412; *see also* ECF 40-1 at 17.

In this case, Kinsella claims that BOEM's approval of the South Fork project should be set aside (and construction on the project be enjoined) because of various deficiencies under the APA. ECF 34-2 ¶ 708. Amongst other things, Kinsella alleges that BOEM failed to consider adverse environmental impacts of the project, including the contamination of East Hampton's drinking water, *id.* ¶ 445, and the adverse population-level impacts on Atlantic cod, *id.* ¶ 605. Kinsella also alleges that the competitive bidding process was deficient, *id.* ¶ 563, that BOEM failed to sufficiently consider alternative plans, *id.* ¶¶ 523–24, and that BOEM failed to consider the economic downsides of the project, *id.* ¶ 639. In addition to his claims under the APA, Kinsella also alleges violations of the National Environmental Policy Act, *id.* at 2, the Outer Continental Shelf Lands Act, *id.*, the Coastal Zone Management Act, *id.* ¶ 499, Executive Order 12898 (relating to environmental justice), *id.* ¶ 574, and the Due Process Clause of the Fourteenth Amendment, *id.* ¶ 594.

Kinsella moved for a Temporary Restraining Order (TRO) on November 2, 2022, ECF 35, which was denied on November 9, 2022. Still pending before the Court is Kinsella's Motion for a Preliminary Injunction. ECF 35. This opinion addresses only Defendants' Motion to Transfer the case to the United States District Court for the Eastern District of New York. ECF 11. Plaintiff

filed an opposition to the Motion, ECF 19, Defendants filed a Reply, ECF 25, and Plaintiff filed (with leave of the Court) a Surreply, ECF 27.

## II.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Section 1404 provides the Court with a mechanism to transfer a case, even in cases where venue is proper in the transferor court, in order "to prevent the waste of time, energy and money[,] and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

The Court employs a two-step analysis to determine whether a case should be transferred. First, the Court determines if the case could have been brought in the transferee district. *S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 234 (D.D.C. 2012). If so, the Court turns to an analysis of the public and private interests supporting transfer. The public-interest factors include: (1) "the local interest in having local controversies decided at home," (2) "the transferee's familiarity with the governing laws" and the pendency of related litigation; (3) "the relative congestion of the calendars of the transferor and transferee courts." *Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012). The private-interest factors include: (1) "the plaintiff's choice of forum;" (2) "the defendant's choice of forum;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties;" (5) "the convenience of the witnesses;" and (6) "the ease of access to sources of proof." *Id.*

## III.   ANALYSIS

Kinsella does not dispute that venue is proper in the transferee court. *See* ECF 19 at 8. The Court therefore moves to the second part of the analysis—weighing the public and private-interest

4

factors for and against transferring the case. Based on its analysis of those factors, the Court determines that the case should be transferred.

### A. The public-interest factors weigh strongly in favor of transferring the case.

The "most important" of the public interest factors is "the local interest in having local controversies decided at home," *Charleston*, 893 F. Supp. 2d at 57, so that concerned members of the public can engage with the proceedings. Pursuant to that principle, other courts in this jurisdiction have said that suits involving "water rights, environmental regulation, and local wildlife . . . should be resolved in the forum where the people whose rights and interests are in fact most vitally affected" are located. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19–20 (D.D.C. 1996). The Court finds that the first public-interest factor weighs heavily in favor of transfer because the South Fork project directly affects the rights of residents of the transferee district, while having no impact at all on the residents of the District of Columbia. Moreover, the heavy involvement of the local public in the approval process preceding the project's approval, *see id.* at 20, together with the pendency of multiple court cases challenging the project "demonstrates that other parties in [the transferee district] are interested" in the controversy, *Villa v. Salazar*, 933 F. Supp. 2d 50, 56 (D.D.C. 2013).

The second public-interest factor also weighs in favor of transfer. Although the transferee court has the same expertise as this Court regarding the laws governing this action, the transferee court is far more familiar with the facts and parties in this case. That is because there is at least one pending lawsuit in the transferee jurisdiction involving a challenge to the same project on similar grounds. *See Mahoney*, 2022 WL 1093199; *see also Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 50 (D.D.C. 2017) ("Courts in this district have consistently held that the interests of justice are better served when a case is transferred to the district where related actions are pending."). The Court takes Kinsella's point that there are differences between that case and the

5

present action: the *Mahoney* defendants include the Army Corps of Engineers; this action involves claims under laws that are not at issue in that case; and the scientific process through which Kinsella claims the groundwater will be contaminated is different than the one highlighted by the plaintiffs in *Mahoney*. ECF 19 at 17–19. But those distinctions do not change the fact that the administrative record will be largely the same in each case, as are at least some of the alleged harms. For example, the transferee court has already heard testimony and considered a motion for a preliminary injunction made largely on the same harms as the pending motion in this case. *Mahoney*, 2022 WL 1093199, at *1. The transferee court's familiarity with the facts and background of this controversy weighs in favor of transfer.[3]

As for the third public-interest factor, Kinsella emphasizes and Defendants acknowledge that the transferee court's docket is more congested than this Court's. ECF 19 at 16–17; ECF 11-1 at 19. However, that one factor does not outweigh the other two. *Cf. W. Watersheds Project v. Jewell*, 69 F. Supp. 3d 41, 44 (D.D.C. 2014). Moreover, the potential prejudice caused by the additional congestion (i.e., potential delay in the adjudication of the case) is offset by the fact that the transferee court is already familiar with the facts and record in this case. Accordingly, the Court finds that the public-interest factors, on balance, weigh strongly in favor of transfer.

**B. The private-interest factors weigh slightly against transferring the case, but they are outweighed by the public interest in transferring the case.**

Most of the private-interest factors are neutral with regard to this case. However, the Court does give weight to Kinsella's preference that the case be heard by this Court, and therefore the private-interest factors, taken together, weigh slightly against transfer. That does not change the

---

[3] Kinsella's Opposition to the Motion to Transfer suggests that the transferee court will not be impartial due to its proximity to the NYPSC. ECF 19 at 13. The Court rejects the argument that the transferee court will not be able to fairly adjudicate Kinsella's claims, and thus gives no weight to that argument.

Court's conclusion that transfer is appropriate, however, because the public interest factors far outweigh Kinsella's preference.

The first two private-interest factors, taken together, weigh against transfer. Kinsella prefers his claims be heard by this Court. Defendants prefer the transferee court. Defendants argue Kinsella's preference should be given little weight because the District of Columbia is not his "home forum," and because his choice of forum was made in part to avoid unfavorable precedent in the transferee court, ECF 11-1 at 20–21. Kinsella counters that his preference should be given priority because—regardless of his personal connection to the District—there is a "substantial connection" between his chosen forum and "the subject matter of the action." *Akiachak Native Cmty. v. Dep't of Interior*, 502 F. Supp. 2d 64, 67 (D.D.C. 2007). The Court agrees with Kinsella. Because the final approval of the project occurred in the District, there is "a sufficiently substantial nexus" between the controversy and the forum. *Id.* The Court therefore grants more weight to Kinsella's preference than Defendants'. *See id.*; *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955).

The third factor weighs neither for nor against transfer. In considering where a claim arose, both the location of the decision-making process and the location of the impacts of the project are considered. *See Ctr. for Env't. Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 357–58 (D.D.C. 2014). Defendants acknowledge that the final approval of the ROD took place in the District. ECF 11-1 at 22. On the other hand, Defendants point out that the bulk of the underlying work leading up to that approval happened outside of this jurisdiction, at BOEM's offices in Sterling, Virginia. ECF 25 at 10; ECF 25-1 at ¶¶ 6, 9. *See also Seafreeze Shoreside Inc. v. U.S. Dep't of the Interior*, Nos. 21-3276, 22-237, 2022 WL 3906934, at *3, n.1 ("[A]nalysis that occurred in . . . Sterling, Virginia, would be a basis for venue in . . . the Eastern District of Virginia, not the District of Columbia."). Moreover, there is nothing to suggest that BOEM's approval of

7

the project will have any impact whatsoever in the District of Columbia. *See Ctr. for Env't. Sci., Accuracy, & Reliability*, 75 F. Supp. at 358 (transferring a case where the impacts of the project-in-controversy would be felt in the transferee district, even though agency decisionmakers were in the District of Columbia). Accordingly, the Court finds that the third private-interest factor weighs neither for nor against transfer.

Kinsella focuses much of his argument on the remaining private-interest factors—"convenience of the parties;" "convenience of the witnesses;" "the ease of access to sources of proof." *Trout Unlimited*, 944 F. Supp. at 16. He emphasizes that the nearest courthouse is sixty miles from the site of the controversy, and that there is no reason to think that the requested transfer would make it any more convenient for any of the parties to make the trip.[4] ECF 19 at 7. Kinsella also points out that the Defendant-agencies, as well as their lawyers, are located in the District of Columbia. *Id.* at 6. Finally, he asserts that this case may well involve extra-record evidence, which would be more easily gathered in the District. *Id.* at 10. The Court is not convinced by those arguments. As an initial matter, the location of the parties' *attorneys* is not relevant to the transfer inquiry. *Charleston*, 893 F. Supp. 2d at 56. More importantly, this is an APA case that will likely be decided at summary judgment on the basis of the administrative record. There is no reason to expect that there will be a trial, or witnesses, or the need for significant extra-record evidence. *See Greater Yellowstone Coal. v. Kempthorne,* Nos. 07-2111, 07-2112, 2008 WL 1862298, at *4 (D.D.C. 2008). Accordingly, the Court concludes that these factors are neutral, and that the private-interest factors, taken as a whole, weigh slightly against transfer.

---

[4] Defendants respond that they would seek to transfer the case to the E.D.N.Y. courthouse in Brooklyn. ECF 25 at 8 n.1. Although a courthouse in New York City would undoubtedly be more convenient for D.C.-based parties and their lawyers, that added convenience does not weigh heavily in the Court's decision here.

8

Although the Court gives due weight to Kinsella's preference that the case be heard by this Court, that consideration is ultimately outweighed by the public-interest factors, which weigh heavily in favor of transfer. In short, the Court concludes that (1) the local interest in having a local controversy adjudicated locally, and (2) the fact that the transferee court is more familiar with the issues in this case, make transferring the case the better course of action here.

### IV.   CONCLUSION

The Court GRANTS Defendants' Motion to Transfer the Case to the District Court for the Eastern District of New York. Accordingly, the Court declines to rule on Plaintiffs' Motion for a Preliminary Injunction. ECF 35.

**SO ORDERED.**

DATE: November 10, 2022

							_____
							Jia M. Cobb
							U.S. District Court Judge