UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
SIMON V. KINSELLA,

              Plaintiff,                      **MEMORANDUM AND ORDER**

  -against-                                    Case No. 23-CV-02915-FB-ST

BUREAU OF OCEAN ENERGY
MANAGEMENT; DEB HAALAND,
Secretary of the Interior, U.S.
Department of the Interior;
MICHAEL S. REGAN, Administrator,
U.S. Environmental Protection Agency,

              Defendants.
------------------------------------------------x

*Appearances*:
*For the Pro Se Plaintiff*:
SIMON V. KINSELLA
P.O. Box 792
Wainscott, N.Y. 11975

*For Defendants*:
AMANDA STONER
U.S. Department of Justice
150 M St., NE
Washington, D.C. 20002

BRIAN P. HUDAK
U.S. Attorney's Office for the
District of Columbia
601 D. St., NW
Washington, D.C. 20530

*For Intervenor Defendant*:
JANICE SCHNEIDER
DEVIN M. O'CONNOR
STACEY VANBELLEGHAM
Lathan & Watkins LLP
555 Eleventh St., N.W.
Ste. 1000
Washington, D.C. 20004

1

**BLOCK, Senior District Judge:**

Pro Se Plaintiff Simon Kinsella ("Kinsella"), a resident of the Wainscott hamlet of the Town of East Hampton, New York, is seeking a preliminary injunction to halt construction of the South Fork Wind Farm and South Fork Export Cable Project (the "Project"). Kinsella claims that as a result of the Project, which is currently under construction, irreparable harm will occur (i) to the drinking water near the onshore portion of the Project and (ii) to the Atlantic cod population near the offshore portion of the Project. For the reasons that follow, Kinsella's motion is denied.

## I.    FACTS AND PROCEDURAL HISTORY

Kinsella's action challenges the approval of the Project granted by the Bureau of Ocean Energy Management ("BOEM"), which is part of the United States Department of the Interior ("DOI"). Specifically, Kinsella argues that BOEM violated the Administrative Procedure Act (the "APA") by failing to adequately consider the Project's potential harm to the area's drinking water and the offshore Atlantic cod population, as well as the Project's negative economic impact. Kinsella also argues that the bidding process for the Project was deficient, that BOEM violated the National Environmental Policy Act ("NEPA"), the Outer Continental Shelf Lands Act ("OCSLA"), the Coastal Zone Management Act ("CZMA"), Executive Order 12898, and the Due Process Clause of the Fourteenth Amendment.

On November 2, 2022, Kinsella moved in the U.S. District Court for the District of Columbia (D.D.C.) for a temporary restraining order, which was denied one week later. Subsequently, the D.D.C. granted Defendants' motion to transfer this case, along with Kinsella's pending motion for a preliminary injunction, to this Court since the Project is located in Suffolk County, New York and another case challenging the same Project is pending before the Court. *See Mahoney v. U.S. Dep't of the Interior*, No. 22-cv-01305, 2022 WL 1093199 (E.D.N.Y. 2022). Kinsella's challenge to the Project is largely the same as that brought by the *Mahoney* plaintiffs, though he adds to their argument by bringing claims under CZMA, the Fourteenth Amendment and an executive order, in addition to the APA, NEPA, and OCSLA. He also does not include the U.S. Army Corp of Engineers as defendants. However, the bulk of the harm claimed by Kinsella is largely the same as that claimed by the *Mahoney* plaintiffs, with the additions of the allegations of harm to the offshore cod population and the potential economic harm caused by the Project. Because these harms underpin all of Kinsella's numerous claims, the Court will address the harms claimed, rather than each individual cause of action, in explaining why Kinsella is not entitled to a preliminary injunction.

The Project—the same one challenged by the *Mahoney* plaintiffs—involves construction of a wind farm located 35 miles east of Montauk Point, Long Island, and the onshore cables that export the energy produced by the windmills to the

onshore electric grid in East Hampton. The cables will be contained in underground trenches that will run through Wainscott, where portions of the groundwater are contaminated by perfluoroalkyl and polyfluoroalkyl substances ("PFAS"). The offshore portion of the Project will involve seafloor construction in an area apparently known for Atlantic cod spawning.

As the D.D.C. pointed out in its November 10, 2022 memorandum and order transferring the venue of this action, the Project's "approval process included myriad opportunities for input from other agencies and stakeholders." Several federal, state, and local agencies participated in the process of preparing the Record of Decision, which approved the Project, and BOEM conducted a public comment period, which included three public hearings, and the review of nearly 400 submittals from the public, agencies, and other interested parties.

Ultimately, the permits to conduct the offshore portion of the Project were issued by Defendants. Permits for the onshore portion of the Project were issued by the New York Public Service Commission ("NYPSC") after years of administrative proceedings which considered the issue of PFAS pollution exacerbation, among other things. An appeal of this approval was denied in New York State court. Separately, residents of Wainscott brought an action in New York State court challenging an easement granted for the trenching in question, which was also denied. In March 2022, the *Mahoney* plaintiffs petitioned this Court for a preliminary

4

injunction to block construction of the onshore portion of the Project, which they claimed would disrupt PFAS in the ground and irreparably harm their already contaminated groundwater quality. The Court denied their request the following month. Kinsella has also brought actions in state court related to the Project.

Now, Kinsella seeks the relief from this Court that he and his neighbors have repeatedly sought and failed to obtain—a bar to the Project's construction. However, Kinsella, like his unsuccessful neighbors, has failed to demonstrate that irreparable harm will result in the absence of a preliminary injunction. Therefore, his motion for the extraordinary relief of a preliminary injunction is denied.

## II. PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). If an injunction "disrupt[s] the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2nd Cir. 2012)).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983). To establish irreparable harm, a movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation omitted).

In addition, because Kinsella's claims concern an administrative agency decision, the Court reviews his claims under the standard provided by the APA. Courts shall set aside agency action when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Agency decision-making is arbitrary and capricious when the agency bases its decision on "factors which Congress has not intended it to consider," when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or its reasoning "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alzokari v. Pompeo*, 973 F.3d 65, 70 (2d Cir. 2020) (internal quotation marks and citation omitted).

## III. ANALYSIS

First, Kinsella argues that the digging for these trenches will disrupt the PFAS in the ground, exacerbating existing groundwater pollution in the area. Though the area and manner in which Kinsella argues that PFAS will be disrupted differs from that of the *Mahoney* plaintiffs, the harm claimed is the same. The same reasoning that the Court applied in denying the *Mahoney* plaintiffs' request for a preliminary injunction applies here. Kinsella's argument likewise fails on the first prong of the preliminary injunction analysis: irreparable harm.

Kinsella need not show that irreparable harm is a guaranteed outcome, but he must show that it is likely. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. Kinsella has not met his burden of demonstrating a likelihood of harm. Aside from the fact that New York State agencies issued the permits for the onshore portion of the Project, not BOEM, and enjoinment of its authorization of the Project would not halt the onshore portion of the Project, the NYPSC has already found that the Project as proposed will not exacerbate existing PFAS, in part because of mitigation measures included in the Project's plan. And, even if the Project did ultimately exacerbate PFAS

contamination, PFAS contamination can be remediated post-facto. *See Mahoney* 2022 WL 1093199, at *2.

Next, Kinsella argues that the seafloor construction undertaken to build the offshore portion of the Project will cause irreparable harm to the cod population, which will in turn drive up the cost of cod. Not only is this argument speculative, far from meeting the standard of a likelihood of harm, but it points to a financial harm generally outside the purview of injunctive relief. It is well-settled that "[m]onetary loss alone will generally not amount to irreparable harm." *Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991). Kinsella's unsubstantiated argument about the Project's potential effect on the price of cod and the harm he may suffer as a result is exactly the sort of speculative argument that *Borey* forecloses.

The same is true of Kinsella's final harm claimed: a potential increase in electricity prices in the area resulting from the Project's expense. Kinsella argues that the Project is based on "one-sided economic[s]" and will cause an increase in electricity prices in the area, which could be disproportionately borne by low-income residents. This argument likewise fails at the preliminary injunction stage for its failure to show a likelihood of irreparable harm and its singular basis on monetary harm that could be remedied with standard damages. *See id*.

8

Finally, as with *Mahoney*, Kinsella waited until several bites at the apple were taken in various judicial and administrative forums, with significant passage of time, before filing this action. This time lapse "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2nd Cir. 1985)).

## CONCLUSION

Plaintiff's motion for a preliminary injunction is **DENIED**.

**SO ORDERED**.

                                                      /S/ Frederic Block
                                                     FREDERIC BLOCK
                                                     Senior United States District Judge

Brooklyn, New York
May 18, 2023