UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
SIMON V. KINSELLA,

       Plaintiff,

  -against-

BUREAU OF OCEAN ENERGY
MANAGEMENT; DEB HAALAND,
Secretary of the Interior; U.S.
DEPARTMENT OF THE INTERIOR,

       Defendants

 and SOUTH FORK WIND LLC,

       Defendant-Intervenor.
--------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 23-CV-2915-FB-ST

*Appearances:*
For the Plaintiff:
SIMON V. KINSELLA, *pro se*
Post Office Box 792
Wainscott, New York 11975

For the Defendants:
VINCENT LIPARI
Assistant United State Attorney
Eastern District of New York
610 Federal Plaza, Fifth Floor
Central Islip, New York 11722

For the Defendant-Intervenor
JANICE M. SCHNEIDER
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004

**BLOCK, Senior District Judge:**

    *Pro se* plaintiff Simon V. Kinsella opposes construction of a wind farm off

Long Island.  He sues the Department of Interior, its Secretary and its Bureau of

Ocean Energy Management ("the Federal Defendants"). The farm's developer, South Fork Wind LLC ("SFW"), has intervened as a defendant.

All defendants now move to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). In addition, SFW moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Kinsella moves for leave to file a second amended complaint.

Because Kinsella is proceeding *pro se*, and because his proposed second amended complaint drastically simplifies his claims, the Court grants leave to amend. However, having considered the second amended complaint, the Court concludes, for the reasons explained below, that Kinsella lacks standing to pursue his claims against the Federal Defendants and fails to state a claim against SFW. Accordingly, the motions to dismiss are granted.

## I.  BACKGOUND

SFW's wind farm consists of two parts: the farm itself, situated 35 miles east of Montauk Point, and an "export cable" to deliver the power generated to an onshore electrical grid in East Hampton. The Federal Defendants issued permits for the offshore portion of the project and, in conjunction with those permits, prepared a Final Environmental Impact Statement ("FEIS"). By contrast, the siting of the onshore cable—which includes a 7.6-mile stretch running through New York's territorial waters to East Hampton—fell within the jurisdiction of the New

York Public Service Commission ("NYPSC").  On March 18, 2021, NYPSC issued a Certificate of Environmental Compatibility and Public Need under Article VII of the New York State Public Service Law, allowing the onshore portion of the project to move forward. NYPSC's permit came after years of administrative proceedings, followed by an unsuccessful state-court appeal of the decision.  *See Citizens for the Pres. of Wainscott, Inc. v. New York State Pub. Serv. Comm'n*, 188 N.Y.S.3d 639 (2d Dep't 2023).

BOEM issued its FEIS on August 16, 2021, and approved SFW's construction and operations plan ("COP") on January 18, 2022.  Two federal lawsuits followed.  In *Mahoney v. United States Department of the Interior*, four residents of the hamlet of Wainscott in East Hampson sought to enjoin the digging of trenching for the cable, arguing that the FEIS did not adequately consider the effect of the digging on perfluoroalkyl and polyfluoroalkyl substances ("PFAs") already present in the groundwater.  The Court denied preliminary injunctive relief, *see* 2022 WL 1093199 (E.D.N.Y. Apr. 12, 2022), and, later, dismissed the case for lack of standing because the alleged exacerbation of PFA contamination was "directly traceable to NYPSC, which had exclusive jurisdiction over onshore trenching."  682 F. Supp. 3d 265, 270 (E.D.N.Y. 2023).

Meanwhile, Kinsella filed suit in July 2022.[1] Like the plaintiffs in *Mahoney*, he sought a preliminary injunction, which was denied. *See Kinsella v. Bureau of Ocean Energy Mgmt.*, 2023 WL 3571300 (E.D.N.Y. May 18, 2023). As the Court presciently observed, "Kinsella seeks the relief from this Court that he and his neighbors have repeatedly sought and failed to obtain—a bar to the Project's construction." *Id.* at *2.

Although Kinsella seeks the same relief as the plaintiffs in *Mahoney*, his second amended complaint is not a carbon copy of the complaint in that case. His first three claims are against SFW for "common-law fraud" based on alleged false statements and omissions in its COP. He then asserts four claims against the Federal Defendants based on alleged violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(2)(C). The Court addresses those claims in reverse order.

## II.   STANDING

"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008) (internal quotation marks omitted). "Where, as here, standing is challenged at the pleadings stage, a court must 'accept as true all material

---

[1] The suit was originally filed in the District Court of the District of Columbia and transferred to the Eastern District of New York in November 2022.

allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (quoting *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998)). However, "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Id.* (internal quotation marks omitted).

As in *Mahoney*, Kinsella's chief claim is that he has been injured by a potential worsening of PFA contamination in the groundwater. But as the Court previously explained, "[t]o show a 'causal connection between the injury and the

5

conduct complained of,' a plaintiff must demonstrate that their injury is fairly traceable to the defendant's actions, 'not the result [of] the independent action of some third party not before the court.'" 682 F. Supp. 3d at 269 (quoting *Lujan*, 504 U.S. at 560-61). Here, by contrast, the record reflects that "State and local entities [like NYPSC] approved Beach Lane as a path for the Export Cable, and the [the Federal] Defendants understood this choice to have already been made when issuing permits for the offshore Wind Farm." *Id.* at 270. The Federal Defendants' jurisdiction, on the other hand, "extends only over the portion of the Project situated on the outer continental shelf, which extends seaward from New York state waters." *Id.* (citing 43 U.S.C. § 1337(p)(1). As the Court went on to explain,

> Of course, construction on the Project, including trenching, could not commence without permits being granted for the Wind Farm—otherwise, there would be no power for the Export Cable to carry ashore. But this bare "but for" relationship does not mean that Defendants' offshore permits "likely caused" trenching on Beach Lane and the PFAS contamination Plaintiffs allege.

*Id.* (quoting *TransUnion LLC*, 141 S. Ct. at 2203). "Instead, Plaintiffs' injuries are directly traceable to NYPSC, which had exclusive jurisdiction over onshore trenching—precisely an 'independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 560.).

Kinsella responds that plaintiffs' counsel in *Mahoney* failed to argue that 43 U.S.C. § 1333 was amended in 2021. Prior to the amendment, the statute extended

6

federal law to "installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources," 43 U.S.C. § 1333(a)(1)(A)(iii) (2020).  The amendment expressly added "non-mineral energy resources," 43 U.S.C. § 1333(a)(1)(A)(iii) (2021), and "any such installation or other device (other than a ship or vessel) for the purpose of transporting or transmitting such resources." *Id.* § 1333(a)(1)(A)(iv).  Thus, even as amended, the statute is restricted to installations and devices attached to the seabed.  Moreover, the definition of "outer continental shelf" remains the same as it was in *Mahoney*.  *See id.* § 1331(a).  For these reasons, the Court concludes that the statutory amendment has no bearing on the Federal Defendants' jurisdiction.

Kinsella next argues that he is excused from the normal standing requirements because he is invoking a procedural right under NEPA.  The Supreme Court has indeed recognized that procedural rights are "special." *Lujan*, 504 U.S. at 572 n.7.  But their special nature means only that "[t]he person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards *for redressability and immediacy*." *Id.* (emphasis added).  As the Supreme Court recently made clear, the requirements of a concrete injury and traceability still apply: "Regardless of the redressability showing we have tolerated in the procedural-rights context, we have never held a

litigant who asserts such a right is excused from demonstrating that it has a 'concrete interest that is affected by the deprivation' of the claimed right." *Dep't of Educ. v. Brown*, 600 U.S. 551, 562 (2023) (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 496–497 (2009)).

The plaintiffs in *Brown* challenged the procedures by which the Department of Education promulgated its student-loan forgiveness plan. The Supreme Court unanimously held that they "fail[ed] to establish that any that any injury they suffer from not having their loans forgiven is fairly traceable to the Plan." *Id.* at 560-61. Thus, while Kinsella need not show that the Federal Defendants would have reconsidered their decision, he must still show that they were responsible for the onshore permits. As explained above, this he cannot do.

Finally, although Kinsella predominantly relies on PFA contamination, one of his claims alleges that an alternate site for the export cable would have resulted in substantially lower rates for consumers.[2] This, too, suffers from a causation problem. The rate agreement was approved by the New York Attorney General and the New York Controller many years before the NEIS; the Federal Defendants had no role in the agreement and no authority to change it.

---

[2]In prior iterations of his complaint, Kinsella referred to a potential decline in the population of Atlantic cod. He has apparently abandoned that basis for standing. In any event, the Court repeats its conclusion that that harm is entirely speculative. *See Kinsella*, 2023 WL 3571300, at *3.

8

In sum, Kinsella has failed to allege an injury that is fairly traceable to the Federal Defendants. As a result, his claims against those defendants must be dismissed for lack of standing.

### III.   FAILURE TO STATE A CLAIM

Like the Federal Defendants, SFW moves to dismiss for lack of standing. But unlike the Federal Defendants, SFW had a role in building the export cable portion of the project. Therefore, Kinsella does not face the same obstacle to demonstrating causation. The Court further concludes that he has adequately alleged the other elements of standing. Although SFW argues that his theory of increased PFAs contamination is speculative, it is sufficiently detailed to survive a motion to dismiss. And while the redress he seeks is extreme—dismantling the entire project—the Court cannot say that it is an impossibility.

Therefore, the Court turns to SFW's motion to dismiss for failure to state a claim. As noted, Kinsella asserts three claims of fraud against SFW. "The elements of a fraud cause of action consist of a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016).

Many of the statements Kinsella cites were made in SFW's submissions to

9

the Federal Defendants, not to him. "Under New York law, fraud claims based on statements made to third parties are only actionable when the defendant made the misrepresentation with the 'intent that it be communicated to the plaintiff and that the plaintiff rely on it' and used the third party 'as a conduit to relay the false statement to plaintiff, who then relied on the misrepresentation to his detriment.'" *Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 174 (S.D.N.Y. 2021) (quoting *Pasternack*, 27 N.Y.3d at 827-29). No allegation of the second amended complaint supports an inference that SFW for intended the Federal Defendants to relay those statements to Kinsella or for Kinsella to rely on them.

Kinsella does allege that SWF stated at a public meeting at which he was present that "it would account for site-specific conditions, leave the area in better condition, and (legally) obtain permits from state and federal agencies." Second Am. Compl. ¶ 263. But those statements fail the reliance element. Kinsella alleges his own reliance in conclusory fashion but does not explain what he would have done differently. His real theory of reliance is that the *Federal Defendants* would not have approved the project had they known the truth. New York law is clear that "such third-party reliance does not satisfy the reliance element of a fraud claim." *Pasternack*, 27 N.Y.3d 817, 827 (2016).

## IV.   CONCLUSION

For the foregoing reasons, the Federal Defendants' motion to dismiss for

10

lack of standing is granted.  SFW's motion to dismiss for failure to state a claim is likewise granted.  Accordingly, the case is dismissed.

**SO ORDERED.**

                                                                               /S/ Frederic Block
                                                                              FREDERIC BLOCK
                                                                              Senior United States District Judge

Brooklyn, New York
September 23, 2024